FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

00 MAR 31 PM 4:49

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| MELANIE AKERS, | } | |
| Plaintiff, | } } } | |
| v. | } | CASE NO. CV 96-B-2599-J |
| BUCCANEER HOMES OF ALABAMA, | } } } } | |
| Defendant. | } } | |

ENTERED
APR -3 2000

## MEMORANDUM OPINION

Currently before the court is the Plaintiff's Motion for Reconsideration of the Granting of Summary Judgment for the Defendant, Buccaneer Homes of Alabama. Plaintiff Melanie Akers ("Akers") contends that the court erred in granting defendant's Motion for Summary Judgment. Upon consideration of the record, the submissions of the parties, and the relevant law, the court is of the opinion that plaintiff's motion is due to be denied.

Akers alleges that the court erred in holding that the harassment of Akers was not sufficiently severe or pervasive so as to alter the conditions of her employment and create an abusive environment. More specifically, she contends that the "bushwa" incident, by itself, constituted actionable sexual harassment. She argues that the court erred in focusing on the frequency of the harassing event as opposed to the severity and vulgarity of the "bushwa." Akers states that one single incident is sufficient to alter the conditions of a person's employment and create an abusive environment.

In support of her argument that a single incident is sufficient for actionable sexual harassment, Akers cites several cases. One case is *Tomka v. Seiler Corp.*, 66 F.3d 1295 (2nd Cir.

50

1995). In *Tomka*, a female employee alleged that three co-employees verbally harassed and raped her. *Tomka,* 66 F.3d at 1300-03. In its analysis of plaintiff's hostile environment sexual harassment claim, the court stated that "[e]ven a single incident of sexual assault sufficiently alters the conditions of the victim's employment and clearly creates an abusive work environment for purposes of Title VII." *Id.* at 1305. As opposed to the facts in *Tomka*, there was no rape of Akers. While Hicks's actions were extremely inappropriate, receiving a "bushwa" is not the same as being raped. *Tomka* does not stand for the proposition that Hicks's "bushwa" of Akers was sufficient to alter the conditions of her employment and create an abusive working environment.

Plaintiff also cites *Guess v. Bethlehem Steel Corp.*, 913 F.2d 463 (7th Cir. 1990), for the proposition that a single incident can create an actionable hostile environment. In *Guess*, the plaintiff appealed the trial court's granting of a Rule 41(b) motion for involuntary dismissal. *Guess,* 913 F.2d at 463. The court granted the dismissal on the basis that the plaintiff had failed to establish an element of her prima facie case, that the defendant failed to take prompt remedial action after it discovered the harassment. *Id.* The facts of the case were that a foreman forced the plaintiff's face against his crotch in front of many other co-employees. *Id.* at 464. However, the court never addressed the question of whether this incident alone was sufficient to constitute a hostile environment. Rather, the issue on appeal was whether there was sufficient evidence that the defendant had failed to take prompt remedial action. *Id.* at 465. Because the issue of whether this one incident was sufficiently severe so as to alter the conditions of the victim's employment and create a hostile environment was not appealed or discussed, *Guess* is not particularly helpful to the court.

Another case which plaintiff cites in support of her position is *Barret v. Omaha National Bank*, 584 F. Supp. 22 (D. Neb. 1983), *aff'd*, 726 F.2d 424 (7th Cir. 1984). Plaintiff alleges that *Barret* stands for the proposition that "[o]ne incident of offensive touching while inside of a vehicle from which the plaintiff could not escape was sufficient to constitute sexual harassment." (Pl.'s Mot for Reconsideration at 3). In *Barret*, the plaintiff went to a seminar with some male co-employees, including Tim Day. *Barrett,* 584 F.Supp. at 22. Plaintiff alleged that during the car trip to the seminar Day rubbed her thighs, pressed his arm against her breast, and, under the facade of reaching for a bag of potato chips in plaintiff's lap, grabbed her in the crotch area. *Id.* at 24. When they arrived at the hotel, Day and another employee joked that they would have to share a room with the plaintiff. *Id.* After dinner, Day went back to plaintiff's room and proceeded to lay on her bed and make sexually lewd comments. *Id.* After Day left the room, plaintiff received a phone call which consisted of heavy breathing and panting. *Id.* The plaintiff further alleged that the next day at the seminar, Day placed his hands on her thighs and rubbed up against her breast. *Id.* at 25. The court held that "it is clear that Tim Day's activities in Grand Island *taken in their totality,* amounted to sexual harassment." *Id.* (emphasis added). Plaintiff's assertion that *Barret* stands for the proposition that one incident of offensive touching is sufficient to constitute actionable sexual harassment is without merit.

As noted, Hicks's "bushwa" of Akers was extremely inappropriate. However, after Akers complained to management, she and Hicks were separated so that they would not come into contact with each other. The cases and other sources cited by the plaintiff do not convince the court that the "bushwa," standing alone, was sufficient to create a sexually hostile environment.

3

As stated in the court's original Memorandum Opinion:

"Plaintiff experienced four separate incidents which could reasonably be viewed as evidence of sexual harassment; (1) she was given a "bushwa" by Hicks; (2) Hicks slapped her bottom with a piece of molding and threatened to "bushwa" her again, (3) Nunn commented that the plaintiff resembled a cake shaped like a female with big breasts; and (4) an unknown person drew breasts on her time card and wrote "big tits." In support of her hostile working environment sexual harassment claim, plaintiff cites incidents involving persons other than Akers. However, there is no evidence that Akers knew of these incidents prior to conducting discovery in this case. In order for a hostile environment claim to succeed, the plaintiff must subjectively view the environment as hostile. *Edwards*, 49 F.3d at 1522. Thus, any incident which plaintiff did not have knowledge of prior to discovery in this case is irrelevant for the purposes of deciding whether the level of harassment which Akers suffered was sufficiently severe and pervasive so as to alter the conditions of her employment and create a hostile working environment."

(Memorandum Opinion entered March 29, 1999, at p. 11.)

Plaintiff argues in her Motion to Reconsider that the court was incorrect in stating that "there is no evidence that Akers knew of these incidents prior to conducting discovery." (Plaintiff's Motion to Reconsider at 6, p. 3.) In support of this argument plaintiff argues that "[p]rior to the assault, Melanie Akers had seen Dwight Hicks emulate anal sex by bushwa-ing other men in the back of the plant. (Akers p. 174)." (Plaintiff's Motion to Reconsider at p. 6.) Counsel cites the only time in plaintiff's deposition where she states she observed such conduct. Her deposition on this point reads in pertinent part as follows:

Q: Tell me as best you can recall what Wade Nichols said.

A: Something along the lines that Melanie really needs a good bushwa, that is what Melanie needs. And I looked at him as if, you know, I didn't understand what he was talking about. I said no, I don't think there is anything I need right now...so while we were walking along and he said something about a bushwa, I had seen him from the back of the plant doing something along there -- hunching this man, and it sort of clicked in my head that is what he was talking about, but I wasn't really sure, and that is why I had replied that -- I said I don't think I need anything

4

except for to get done working and go home.

(Dep. of Melanie Akers, p. 174-175.)

Contrary to plaintiff's argument, there is no evidence before the court that, other than the one incident recounted by plaintiff on page 174 of her deposition, plaintiff knew of the other incidents of "bushwa-ing" prior to discovery. As noted in the court's Memorandum Opinion entered March 29, 1999, "any incident which plaintiff did not have knowledge of prior to discovery in this case is irrelevant for the purposes of deciding whether the level of harassment which Akers suffered was sufficiently severe and pervasive so as to alter the conditions of her employment and create a hostile working environment." Because the court remains of the opinion that plaintiff's allegations do not rise to the level of being so severe and pervasive as to alter the conditions of her employment, the court need not address plaintiff's argument in her Motion to Reconsider that the court erred in finding that there was insufficient evidence for a reasonable jury to find that Buccaneer had constructive knowledge of any of the harassing incidents.[1]

However, there is one portion of the court's Memorandum Opinion on this issue, that the court would like to modify. On page 14 of the court's opinion the court states:

> Plaintiff argues that since "bushwa-ing" was a common practice at Buccaneer, the defendant had constructive knowledge of a hostile environment. While this action was clearly inappropriate when directed at Akers, *"bushwa-ing" was horseplay among men at Buccaneer. The fact that certain men had engaged in this conduct with each other as horseplay* did not give Buccaneer constructive knowledge of a sexually hostile environment before the incident between Hicks and Akers. There is no evidence on the record that Buccaneer knew or should have know, before the incident between Hicks and

---

[1] The court is of the opinion that plaintiff's argument that the court erred in granting summary judgment on plaintiff's claim of retaliation does not warrant further discussion.

5

Akers, that "bushwa-ing" was perpetrated against any females or was creating a sexually hostile environment. Furthermore, there is no evidence that Buccaneer knew or should have known that Hicks sexually harassed females at the plant. Therefore, Buccaneer did not have constructive knowledge of a sexually hostile environment. (Emphasis added).

The court is of the opinion that such conduct could only be labeled as "horseplay" if no women were present. If the plaintiff had testified that in addition to the one incident in which it was perpetuated on her, she had observed numerous incidents of 'bushwa-ing' between men, the court is of the opinion that whether such conduct created a sexually hostile environment would have been a question of fact for the jury (assuming of course, that the court also concluded that defendant had constructive notice of such activity and failed to take prompt remedial action).

After carefully considering the brief and evidentiary submissions of the plaintiff, the court is of the opinion that the Plaintiff's Motion for Reconsideration of the Granting of Summary Judgment For the Defendant, Buccaneer Homes of Alabama is due to be denied. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this 31st day of March, 2000.

*Sharon Lovelace Blackburn*
**SHARON LOVELACE BLACKBURN**
United States District Judge

6